UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| SENTRY SELECT INSURANCE COMPANY, | ) ) | |
| | ) | Civil Action No. 3:22–CV–110–CHB |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| ELLIS, LLC, | ) ) | |
| Defendant. | ) ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on its own Order [R. 14] requiring the parties to show cause as to whether the Court should exercise jurisdiction over Plaintiff Sentry Select Insurance Company's ("Sentry") request for declaratory relief pursuant to 28 U.S.C. § 2201. [R. 1]. Sentry and Defendant Ellis, LLC filed memoranda addressing the issue. [R. 16; R. 17]. This matter is now ripe for review. For the reasons stated herein, the Court declines to exercise its discretionary jurisdiction over Sentry's declaratory judgment action.

I.      **Background**

A. **Boerste I ("Underlying Action")[1]**

On April 15, 2016, Bryan Tyler Boerste drove to Saint Catharine College ("the school") in Washington County, Kentucky, to visit friends. [R. 16–5, p. 9, ¶ 10]. One day later, Joshua

---

[1] Bryan Tyler Boerste, the plaintiff in the Underlying Action, has filed three suits against Ellis, LLC (and others): *Boerste I* (Wash. Cir. Ct., No. 16–CI–064), which was timely removed to federal court — *Boerste v. Ellis Towing, LLC*, No. 3:17–cv–298 (W.D. Ky. 2022); *Boerste II* (Wash. Cir. Ct., No. 18–CI–011); and *Boerste III* (Wash. Cir. Ct., No. 18–CI–087). *See* [R. 1, pp. 3–5, ¶¶ 13, 18, 19]. *Boerste II* was dismissed by Boerste on February 14, 2018. *Id.* at 4 ¶ 18. *Boerste III* has been stayed pending resolution of the Underlying Action. *Id.* at 5 ¶ 19; *see also* [R. 17, p. 3 n.1]. Consequently, *Boerste I* serves as the Underlying Action in this case. *See* [R. 16–5 (amended state court complaint)]; *see also* [R. 17, p. 3 n.1 ("[T]he relevant relationship for the purposes of analyzing the *Grand Trunk* factors is the one between this declaratory judgment action and [*Boerste I*].")].

Baker, a security patrolman for the school, instructed Boerste to vacate campus. *Id.* ¶¶ 9, 11. While leaving campus, Boerste's car got stuck in a ditch located on the school's property. *Id.* ¶ 12. Shortly thereafter, Michael Cotton, a police officer at the Springfield Police Department, arrived at the scene and informed Boerste that a tow truck would be called if Boerste failed to recover his car and leave campus within an hour. *Id.* at 8, 10–11 ¶¶ 6, 13–14. At Boerste's request, his friends, who resided on campus, came to assist him in dragging his car out of the ditch. *Id.* at 10 ¶ 15. However, not long after Boerste's friends' arrival, a tow truck, owned by Ellis Towing, LLC and driven by employee Kevin Bewley, appeared. *Id.* at 8, 10 ¶¶ 7, 18–19. Bewley began to load Boerste's vehicle onto the tow truck. *Id.* at 10 ¶ 19. To stop Bewley's efforts, Boerste climbed and sat on the roof of his car. *Id.* Nonetheless, and without any preventive action by either Officer Cotton or Baker, Bewley continued to load Boerste's car onto the tow truck. *Id.* ¶¶ 19–20.

Once Boerste's car was loaded, Bewley, as allegedly directed by Officer Cotton, drove the car, with Boerste still atop of it, to a public road "where [Officer] Cotton would arrest him." *Id.* ¶ 21. According to the complaint, upon making a right turn on Bardstown Road, Bewley increased speed, which caused Boerste to fall from the roof of his car to the pavement below. *Id.* at 12 ¶ 31. The fall caused Boerste to strike his head on the pavement, rendering him unconscious. *Id.* ¶ 32. In addition, the fall's momentum caused Boerste to collide with the guardrail. *Id.* Despite Boerste's fall, Bewley did not immediately slow down or stop the tow truck. *Id.* ¶ 33. Boerste's friends were the first to reach Boerste's unconscious body and render aid. *Id.* ¶¶ 34, 37. Shortly thereafter, Baker and Officer Cotton arrived on the scene, but allegedly took "no action to secure the area or provide any medical care to [Boerste]." *Id.* ¶¶ 35–36. Instead, the scene was only secured when a second Springfield police officer arrived. *Id.* ¶ 38.

2

After being transported to the Washington County Emergency Medical Services, Boerste was eventually airlifted to the University Hospital in Louisville, Kentucky. *Id.* at 13 ¶ 39.

As a result of these allegations, Boerste filed the Underlying Action against Ellis, LLC and Ellis Towing, LLC in Washington Circuit Court on June 15, 2016. *See* [R. 16–1 (state court complaint)]; *see also Boerste I* (Wash. Cir. Ct., No. 16–CI–064). Less than a year later, on April 5, 2017, Boerste filed an amended complaint, which dropped Ellis, LLC as a defendant and added several new defendants and federal causes of action. *See* [R. 16–5 (First Amended Complaint)]. The case was successfully removed to the United States District Court of the Western District of Kentucky on May 11, 2017. *See* [R. 1, p. 1; R. 16–6 (Notice of Removal)]; *see also Boerste v. Ellis Towing, LLC, et al.*, No. 3:17–CV–298. Via letter, Sentry assumed the defense of its insured, Ellis, LLC, under a complete reservation of rights on August 29, 2018, *see* [R. 1, p. 11, ¶ 33], and Ellis, LLC intervened in the Underlying Action on April 2, 2019. *Id.* at 1, 5 ¶ 20. A little over a year later, on May 14, 2020, Sentry filed a Motion to Intervene, seeking a coverage determination regarding its duty to defend and indemnify its insured, Ellis, LLC. The motion, however, was denied. *See id.* at 5 ¶¶ 23, 25; *see also Boerste v. Ellis Towing, LLC, et al.*, No. 3:17–CV–298 at [R. 161] and [R. 253]. On June 16, 2022, the Court entered an Amended Opinion and Order, which granted summary judgment in favor of the defendants on Boerste's federal claims and remanded the remaining state-law claims to the Washington Circuit Court. *See Boerste v. Ellis Towing, LLC, et al.*, No. 3:17–CV–298 at [R. 271] and [R. 272].

## B.  The Present Action

Having been denied intervention in the Underlying Action, Sentry filed this declaratory judgment action against Ellis, LLC on February 23, 2022, seeking a declaratory judgment that it owes no duty to defend or indemnify Ellis, LLC ("Ellis") in the Underlying Action and/or

*Boerste III*. [R. 1].[2] Specifically, Sentry asserts that there is a dispute over whether the claims against Ellis in the Underlying Action and *Boerste III* are covered events under its respective insurance policy. *See id.* at 12 ¶ 36.

As described by Sentry, Ellis was covered by Sentry Policy No. CT751752002 ("the Policy") from November 10, 2015, to November 10, 2016. *Id.* at 6 ¶ 28. The Policy includes commercial general liability ("CGL") coverage and motor carrier ("MC") coverage. *Id.* Under the CGL coverage, Sentry is liable for damages due to covered "bodily injury." *Id.*; *see also* [R. 16–2, p. 20].  However, Sentry argues the CGL coverage does not apply to the injuries alleged in the Underlying Action and *Boerste III* because they fall under one and/or two exclusions — that is, "'bodily injury' …  expected or intended from the standpoint of the insured" ("expected and intended exclusion") and/or "'bodily injury' … arising out of the ownership, maintenance, use or entrustment to other of any … 'auto' … owned or operated by or rented or loaned to any insured" ("auto exclusion"). [R. 1, pp. 6, 12, ¶¶ 29, 36]; *see also* [R. 16–2, pp. 21, 23]. In addition, Sentry argues the MC coverage, which is also liable for damages due to covered "bodily injury," also fails to apply because of the MC coverage's expected and intended exclusion and/or because the tow truck in the Underlying Action and *Boerste III* does not qualify as a covered automobile. [R. 1, pp. 8–12, ¶¶ 31, 36]; *see also* [R. 16–2, pp. 50–52]. Finally, Sentry argues the Policy does not apply because it does not cover: (1) the types of damages sought by Boerste in the Underlying Action and *Boerste III*, or (2) joint ventures or partnerships not listed as a Named Insured in the Policy.[3] [R. 1, p. 12, ¶ 36(d)–(e)].

---

[2] Ellis Towing, LLC is not a defendant in this declaratory judgment action. Ellis, LLC, Sentry's insured, is the only defendant. *See* [R. 1]. Further, Sentry seeks a declaration of rights in both the Underlying Action and *Boerste III*, which is stayed pending resolution of the Underlying Action, because both "are based on the same subject matter." [R. 17, p. 3 n.1].

[3] Sentry interprets Boerste's First Amended Complaint in the Underlying Action [R. 16–5] to allege Ellis was in a joint venture or partnership with several other entities, including Ellis Towing, LLC, and Ellis Trucking. *See* [R. 17, p. 2]. At this time, the exact relationship between these entities is unclear to the Court. However, since clarification

On April 15, 2022, Ellis filed its answer to the declaratory judgment complaint. [R. 9]. On April 21, 2022, the Court ordered the parties to brief the issue of whether the Court should exercise its discretion to accept jurisdiction under the Declaratory Judgment Act. [R. 14]. The parties have fully briefed the issue. [R. 16; R. 17].

## II.    Analysis

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). As the use of the permissive "may" suggests, "a district court's ability to hear an action under the Declaratory Judgment Act does not compel it to do so." *Grange Mut. Ins. Co. v. Safeco Ins. Co. of America*, 565 F. Supp.2d 779, 785 (E.D. Ky. 2008) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942)). Rather, "this act '[c]onfers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

However, "[d]istrict courts must exercise this discretion cautiously." *Id.*; *see also W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (explaining that Court's discretion under the Declaratory Judgment Act "must not be unguided"). As this Court previously explained, "We are, after all, courts of limited jurisdiction. And, if our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Grange*, 565 F. Supp.2d at 785 (internal citations omitted). The Sixth Circuit has similarly "cautioned district courts not to

---

on the issue is not required for the resolution of this declaratory action, the Court will not seek to determine the precise relationship between the entities.

jump into the middle of ongoing litigation," noting that "declaratory judgment actions seeking an advance opinion of indemnity issues are seldom helpful in resolving an ongoing action in another court." *Id.* (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004)) (internal quotation marks omitted). Nevertheless, "no per se rule exists against exercising jurisdiction" under the Declaratory Judgment Act. *Id.* (citing *Bituminous*, 373 F.3d at 812–13).

The Sixth Circuit has identified two general principles to determine whether it would be appropriate to accept jurisdiction over a declaratory judgment action:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citation omitted). With these general principles in mind, the Sixth Circuit articulated five factors to guide district courts as they consider whether to exercise jurisdiction under the Declaratory Judgment Act:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Id.* (citation omitted). The Court considers each of the *Grand Trunk* factors in turn.

## A. Factor One

The first *Grand Trunk* factor asks "whether the declaratory action would settle the controversy." *Id.* In the Sixth Circuit, "[t]wo lines of precedent seem to have developed in our

jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 555 (6th Cir. 2008). The key distinction between these two lines of precedent is whether the declaratory action must settle the controversy in the state court action, or whether it need only settle the insurance coverage dispute. Some cases hold that "a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* (citations omitted). "A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court. *Id.* (citations omitted).

The Sixth Circuit has examined the reasoning for this split:

> The difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible. However, the contrary results in these cases might also be explained by their different factual scenarios. In [*Bituminous Casualty Corporation v. J & L Lumber Co.*] for example, the insurance company sought a declaration that it was not required to defend or indemnify the defendant in a state court action based on a logging accident which injured one of its employees. In evaluating this first discretionary factor, we focused on the fact that the insurance coverage controversy rested on a fact-based question of state law regarding whether the plaintiff in the state action was actually an employee of the defendant. We noted that the question of employment status was already being considered in two separate state court proceedings. We also registered our concern that the plaintiff in the state tort action "was not made a party to the declaratory judgment action [and thus] any judgment in the federal court action would not be binding as to him and could not be res judicata in the tort action." Considering these facts, we found that "a declaration of insurance coverage would not resolve the controversy."

> In [*Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448 (6th Cir. 2003)] we did not face similarly troubling facts. The plaintiff in that case sought a declaration of no duty to defend or indemnify the insured title company against a title insurance underwriter's state court claims for embezzlement and conversion. In determining that the exercise of jurisdiction was proper, we noted that the plaintiff "was not a party to the state court action and neither the scope of the

insurance coverage nor the obligation to defend was before the state court." We relied on these facts to find that a declaratory judgment would resolve the insurance coverage controversy and would clarify the legal relations at issue.

*Id.* at 555–56 (internal citations omitted). Thus, this factor presents competing policy considerations and a case-specific inquiry.

Sentry's declaratory judgment requests the Court to determine whether Sentry owes a duty to defend and indemnify Ellis under the Policy's CGL and/or MC coverage in both the Underlying Action and *Boerste III*. *See* [R. 1, pp. 6–11; R. 17, p. 1]. In its Response, Sentry contends that this determination involves "no difficult or fact-bound issues of Kentucky law … that [] await resolution in the Underlying Action," but only "depend[s] on the allegations of Mr. Boerste's Complaint in the Underlying Action, rather than any findings of fact with respect to those allegations." [R. 17, p. 7]. Ellis, however, argues that factor one weighs against the Court exercising jurisdiction because, if the Court were to make a coverage determination, it risks making conflicting findings on unresolved factual disputes that are currently at the "center of the tort action remanded to state court." [R. 16, p. 7]. In addition, Ellis argues that the Court should decline to exercise jurisdiction because Sentry fought so earnestly to intervene in the Underlying Action in the past. *Id.* at 7–8; *see also* [R. 16–10 (Sentry's Motion to Intervene)]. In other words, as interpreted by the Court, Ellis contends that because Sentry had no aversion to moving to intervene in the Underlying Action while it was in federal court, it should have no aversion to moving to intervene (or to initiate a state court declaratory action) in Washington Circuit Court because "[c]ircumstances have not changed" in such a way to diminish Sentry's "practical interest and stake in the resolution of the allegations against Ellis." [R. 17, p. 7 (quoting [R. 16–10, p. 6])]. While the latter argument holds little sway, the Court does agree with Ellis' first

argument — that is, the potential of this Court's factual findings conflicting with the state court's findings weighs against exercising jurisdiction.

Although Sentry is not currently a party to the action pending in Washington Circuit Court, *see supra* Section I., resolution of Sentry's declaratory judgment action would likely require this Court to engage in fact-finding that may affect the Underlying Action. Sentry seeks a declaration by this Court that it has no duty to defend or indemnify Ellis for the incident that occurred on April 16, 2016, based on several exclusions, including an "expected or intended" exclusion. *See id.*; *see also* [R. 1, p. 12, ¶ 36(c)]; [R. 16–2, p. 21]. However, determining the applicability of the exclusions and the duty to indemnify will require the Court to inquire into and make factual determinations regarding the allegations in the Underlying Action's complaint and the actions that serve as the basis for the asserted liability. For example, to determine whether the April 16, 2016, incident falls under the "expected or intended" exclusion, the Court would have to determine whether the bodily injury suffered by Boerste was "expected or intended from the standpoint of" Ellis (via its employee, Bewley). [R. 16–2, p. 21]. Resolving this issue would demand an inquiry as to Bewley's intent — a factual issue which will no doubt be disputed in the Washington Circuit Court. *See* [R. 16, p. 7 (stating the "expected or intended" exclusion is at "the center of the tort action remanded to state court")]; [R. 16–12, p. 4 (summarizing the conflict in Bewley and Officer Cotton's testimonies regarding why Bewley drove the tow truck with Boerste still on top of the roof of his car)]. As a result, the Court "cannot settle the question of coverage without engaging in fact-finding that may impact the [U]nderlying [A]ction." *Auto Club Prop.-Casualty Ins. Co. v. Denton*, No. 4:15–CV–00035–JHM, 2015 U.S. Dist. LEXIS 95192, at *11 (W.D. Ky. July 21, 2015). Consequently, factor one weighs against exercising jurisdiction. *See Encompass Indem. Co. v. Gray*, No. 3:17–CV–

00713–RGJ, 2020 U.S. Dist. LEXIS 11313, at *9–18 (W.D. Ky. 2020) (where the court found that factor one weighed against exercising jurisdiction because the "expected or intended" exclusion created a risk of inconsistent factual findings with the state court).

### B.  Factor Two

Factor two considers "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. This factor "is closely related to the first factor and is often considered in connection with it." *Flowers*, 513 F.3d at 557 (citing *Travelers*, 495 F.3d at 271–72). "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* (citing *Biuminous*, 373 F.3d at 814; *Northland*, 327 F.3d at 454). As with the first factor, a split has developed among Sixth Circuit jurisprudence "concerning whether the district court decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Id.* (citations omitted). In *Flowers*, the Sixth Circuit found "the former line of precedent to be more persuasive than the latter." *Id.* It explained,

> The requirement that the judgment clarify the legal relationships of the parties is based upon our desire for the declaratory judgment to provide a final resolution of the discrete dispute presented. While the parties may have other tortious or contractual relationships to clarify in state court, our concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer. Thus, we focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court.

*Id.*

Thus, in *Flowers*, the Court found that the second factor supported the district court's exercise of jurisdiction, as it clarified the legal relations at issue in that case — "namely, the

contractual duties of indemnification owed by [the insurance company] to the [declaratory defendant]." *Id.* The Court noted that, "[w]hile [the declaratory action] did not clarify all of the legal relationships at issue in the state court action, the district court's decision did not create any confusion about the resolution of those issues," nor would it "confuse the state court's analysis of [the] liability issues." *Id.* In more recent decisions, the Sixth Circuit again affirmed the lower courts' exercise of jurisdiction, finding no abuse of discretion as to the second *Grand Trunk* factor where the declaratory action clarified the legal relationships of the parties to the declaratory action, but not the state court litigation. *See United Specialty*, 936 F.3d at 398–99; *Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759 Fed. App'x 431, 438 (6th Cir. 2019).

In this case, the requested declaratory judgment will resolve certain coverage issues between Sentry and Ellis, namely whether exclusions under either the CGL or MC coverage forecloses Sentry's duty to defend and indemnify Ellis in the Underlying Action and *Boerste III*. [R. 17, p. 1]. Resolution of these issues will not resolve the underlying liability issues presently in state court. *See Flowers*, 513 F.3d at 557. However, the state court issues focus on the Underlying Action's remaining state-law claims, *see Boerste v. Ellis Towing, LLC, et al.*, No. 3:17–CV–298 at [R. 271 (Amended Opinion and Order, "remand[ing] the case to Washington Circuit Court for adjudication of the remaining state-law claims.")] and [R. 1–2, Ex. A (listing negligence claims, outrage or intentional infliction of emotional distress, and punitive damages)], and those issues are not dependent on this Court's resolution of the coverage issues. Thus, resolution of the coverage question will not likely complicate or confuse the state court liability issues. *Flowers*, 513 F.3d at 557; *see also* [R. 17, p. 9 ("There is little or no risk that a ruling on [the coverage issue] would create any confusion in the Underlying Action.")]. Accordingly,

11

"[a]lthough the declaratory judgment will 'not resolve the relative rights of all parties in the state court litigation, it does determine whether the insurer must continue defending the insured party[.]" *United Specialty*, 936 F.3d at 399; *see also* [R. 17, p. 9 ("A ruling … would clarify the legal relationship between Sentry and Ellis.")]. As a result, this factor weighs slightly in favor of exercising jurisdiction. [4]

### C.  Factor Three

The third *Grand Trunk* factor asks whether the declaratory judgment action "is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326. Typically, "[f]iling a declaratory judgment action in a forum separate from the underlying litigation is not considered improper by itself." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (6th Cir. 2008)).  However, plaintiffs who file their suits only days or weeks before the corresponding state court action is filed, "and who seem to have done so for the purpose of acquiring a favorable forum," are subject to scrutiny under this factor. *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)) (internal quotation marks omitted). In other words, this factor asks "whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Id.* (quoting *Dale*, 386 F.3d at 789) (internal quotation marks omitted).

Typically, courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* (citations omitted). When no such evidence exists, courts often give the "benefit of the doubt" to the declaratory plaintiff and find that the third factor is

---

[4] Given the analysis of factor one, *see supra* Section II.A., the Court acknowledges that this conclusion required a closer call. *See Gray*, 2020 U.S. Dist. LEXIS 11313, at *573 (concluding the "expected and intended" exclusion caused factors one and two to weigh against exercising jurisdiction); *Denton*, 2015 U.S. Dist. LEXIS 95192, at *11 (same).  However, for the purposes of this Motion, the Court will assume the state court issues are not dependent on the coverage issues currently at bar.

neutral. *See, e.g.*, *Bituminous*, 373 F.3d at 814. The Sixth Circuit has also noted that "this factor should be afforded little weight in cases where . . . there is no evidence of procedural fencing." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Travelers Indem. Co. v. Bowling Green Prof. Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007)); *see also United Specialty*, 936 F.3d at 399 (explaining that this factor "usually does not weigh heavily in the analysis").  Stated another way, "the lack of improper motive in filing alone cannot justify the exercise of jurisdiction when all the other factors weigh on the side of declining." *Bituminous*, 373 F.3d at 817 (citation omitted).

In the present case, Sentry argues that there is no evidence of procedural fencing because it did "not 'forum shop[]' in filing its declaratory judgment action." [R. 17, p. 10]. In support of its argument, Sentry points to the fact that it did not file this action until more than five years after the Underlying Action was commenced. *Id.* Ellis does not counter this argument but concedes that "[t]here can be no dispute in this instance that Sentry has not raced to the courthouse." [R. 16, p. 8]. The Court agrees. There is no evidence of procedural fencing in this action. As noted above, the present declaratory action was filed almost five years after the complaint was filed in the Underlying Action. Thus, as conceded by Ellis, *see id.*, there is no evidence to suggest that Sentry rushed to file this suit to get the upper hand. Therefore, the Court will give the benefit of the doubt to Sentry that there was no improper motive behind its filing. However, as noted above, "this factor should be afforded little weight in cases where . . . there is no evidence of procedural fencing." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Travelers*, 495 F.3d at 272). Accordingly, this third factor is neutral, and the Court will afford it little weight.

### D.  Factor Four

The fourth factor asks, "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Grand Trunk*, 746 F.2d at 326. Like factors one and two, this factor focuses on the presence of novel or complicated state law or factual issues. *See, e.g.*, *United Specialty*, 936 F.3d at 400 ("For purposes of the fourth *Grand Trunk* factor, it is important simply to note that the question does not involve novel or complicated state-law or factual issues."). On this point, the Supreme Court has warned that "a district court might be indulging in '[g]ratuitous interference'" if it permits a federal declaratory relief action to proceed when "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court." *Flowers*, 513 F.3d at 559 (quoting *Wilton*, 515 U.S. at 283). "However, 'the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction.'" *Id.* at 560 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987)).

The Sixth Circuit has identified three subfactors to aid courts in considering this factor:

(1) whether the underlying factual issues are important to an informed resolution of the case;
(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814–15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)); *see also United Specialty*, 936 F.3d at 396 (reciting the three subfactors). The Court addresses each subfactor in turn.

### i. Subfactor 1

Sub-factor one "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. District courts have declined to exercise jurisdiction when the state and federal cases involved the same factual issues. *See Gray*, 2020 U.S. Dist. LEXIS 11313; *Am. Nat'l Prop. & Cas. Co. v. Wilson*, No. 18–116–DLB–CJS, 2019 U.S. Dist. LEXIS 70842 (E.D. Ky. Apr. 26, 2019). As discussed above, *see supra* Section II.A., determination of the coverage and indemnity issues in this case exposes the Court to a possibility of conflicting factual findings with the Kentucky court, and therefore weighs against exercising jurisdiction. *See Massachusetts Bay*, 759 F. App'x at 440 (citation omitted) ("Thus, it appears that this case is dependent on factual findings by the state court, which weighs against exercising jurisdiction."). Because factual findings by the Kentucky court could be in conflict and duplicative with those in this Court, this subfactor counsels against exercising jurisdiction. *Id.*

### ii.  Subfactor 2

The second subfactor asks "whether the state trial court is in a better position to evaluate those factual issues than is the federal court." *Bituminous*, 373 F.3d at 814 (citing *Roumph*, 211 F.3d at 968). This subfactor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. Typically, this subfactor weighs in favor of exercising jurisdiction "when the state law is clear and when the state court is not considering the issues." *Flowers*, 513 F.3d at 560.  For example, "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Id.* (quoting *Northland*, 327 F.3d at 454). However, when the declaratory action involves novel issues of state law, it usually weighs

against jurisdiction because "[w]e generally consider state courts to be in a better position to evaluate novel questions of state law." *Id.* (citing *Travelers*, 495 F.3d at 272). However, "novelty is not the only concern." *Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, No. 12–39–ART, 2012 WL 3067579, at *4 (E.D. Ky. July 27, 2012) (holding that while the state-law questions were not particularly novel, "this case involves only questions of state law … indicat[ing] the possibility of friction with the state court"). In some cases, the Sixth Circuit has placed greater emphasis on the state court's superior ability to resolve questions of state law, "without immediately pointing to the novelty of the state law issues." *Id.* (citing *Bituminous*, 373 F.3d at 815).

On this point, the Court notes that there are no novel state law issues to be resolved in this declaratory relief action. In addition, the coverage issues are not at issue in the Underlying Action, nor is Sentry a party to the Underlying Action. *See* [R. 17, p. 11 ("No novel questions of state law are presented here, and the scope of coverage … [is] not at issue in the Underlying Action.")]; *see also* [R. 17–11, p. 6 (denying Sentry's motion to intervene in the Underlying Action)]. These facts weigh in favor of exercising jurisdiction. *See Grange*, 565 F. Supp. 2d at 790. However, as noted above, "novelty is not the only concern." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *4. The present case presents questions of state law, novel or not, and the state court's superior ability to apply its own law weighs against exercising jurisdiction. *See Grange*, 565 F. Supp. 2d at 790 ("Since this is an insurance action, the state court is better situated to decide the issue, weighing against jurisdiction."); *see also* [R. 16, p. 9]. Thus, subfactor two weighs in favor of jurisdiction to the extent this case lacks any novel state law issues (and the Underlying Action is not considering the issues), but it weighs against jurisdiction because it raises only issues of state law, which state courts are in a better position to

apply. *Id.*; *see also United Specialty*, 936 F.3d at 401 (noting that although the "general presumption" that state courts are in a better position to decide state law questions has less force when the state law is clear and the state court is not considering the issues, "that does not necessarily mean that the concern is completely dispelled in these circumstances"). Accordingly, this subfactor is, at best, neutral.

### iii.   Subfactor 3

Under the third subfactor, the Court must consider "whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Bituminous*, 373 F.3d at 814–15 (citing *Roumph*, 211 F.3d at 968).  In other words, this subfactor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. For example, in cases involving insurance contract interpretation issues, the Sixth Circuit has held that such issues are "questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Id.* (quoting *Travelers*, 495 F.3d at 273) (internal quotation marks omitted). This is true because "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* (quoting *Bituminous*, 373 F.3d at 815) (internal quotation marks omitted); *but see Northland*, 327 F.3d at 454 (finding that the Court's exercise of jurisdiction would not create friction between the state and federal courts).

This Court finds that this case implicates state policy that could be frustrated by the exercise of jurisdiction. As the Sixth Circuit explained in *Flowers*, "[i]nterpretation of Kentucky insurance contracts is guided by state public policy. Despite the clear indications from the

Kentucky courts regarding how such an issue should be resolved, Kentucky courts are in a better position to resolve the insurance policy interpretation in this case." 513 F.3d at 561. This Court agrees with that analysis and the Sixth Circuit recently endorsed it in *United Specialty*, holding that "even in cases where state law has not been difficult to apply, this court has usually found that the interpretation of insurance contracts is closely entwined with state public policy." 936 F.3d at 401. The nexus between the legal issues in this case and state policy is clear. *See* [R. 16, p. 9]. Relatedly, the *lack* of nexus between the state law issues presented and the federal forum is obvious — "[n]o federal-law questions are involved in the coverage issue" before the Court, and Sentry does not argue to the contrary. *See* [R. 17, pp. 11–12]; *see also Massachusetts Bay* at 441 ("[N]o federal laws are at issue."). In other words, this case does not turn on federal law, but rather Kentucky's interpretation of insurance contracts — state law that is "guided by state public policy." *Flowers*, 513 F.3d at 561. Therefore, this subfactor weighs strongly against exercising jurisdiction.

In sum, the first subfactor weighs against exercising jurisdiction; the second subfactor is neutral; and the third subfactor weighs strongly against exercising jurisdiction.  The fourth *Grand Trunk* factor is therefore best described as weighing against exercising jurisdiction.

### E.  Factor Five

The final *Grand Trunk* factor asks "whether there is an alternative remedy which is better or more effective." *Grand Trunk*, 746 F.2d at 326. In many cases involving similar insurance coverage issues, the Sixth Circuit has held that an alternative remedy is available through a declaratory judgment under state law or an indemnity action in the state court at the conclusion of the liability proceedings. *See, e.g.*, *United Specialty*, 936 F.3d at 401–01; *Massachusetts Bay*, 759 Fed. App'x at 441–42; *Travelers*, 495 F.3d at 273; *Bituminous*, 373 F.3d at 816–17; *Manley,*

*Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462–63 (6th Cir. 1986). In those cases, the Court noted that the coverage issues involved questions of state law; they did not require application of federal common or statutory law. However, the Sixth Circuit has also acknowledged that "it is not clear whether such alternative remedies are better or more effective than a federal declaratory action." *Flowers*, 513 F.3d at 562. On this issue, Sixth Circuit "precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction." *Id.* (citations omitted).

However, in *Flowers*, the Sixth Circuit clarified that, "rather than applying a general rule," the relevant inquiry "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.* In that case, the insurer sought a declaratory judgment that it had no duty to indemnify a therapist employed by the insured, a mental health services provider, in a state emotional distress suit stemming from the therapist's sexual affair with a patient. *Id.* at 550–51. The Court noted that, under those circumstances, a state declaratory action would have been better than federal declaratory action "[i]n many ways." *Id.* For example, "Kentucky courts are in a superior position to resolve undecided questions of state law such as whether a therapist's sexual activities with his client are outside the scope of his employment." *Id.* at 562. The Kentucky courts would also have been able to combine the two actions, thereby allowing a single judge to resolve all issues. *Id.* However, the Sixth Circuit also acknowledged that Kentucky law provided clear guidance on this issue, so a federal declaratory action was not "clearly inferior." *Id.* On the other hand, an indemnity action would *not* have been a superior remedy, because the insurer had attempted to join the state court action but had been prevented from doing so. *Id.* Even if the insurer joined the state court action, it would be required

19

to wait until the liability issues were resolved before determining its obligations to the therapist. *Id.* "Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id.* More recently, however, the Sixth Circuit upheld the district court's determination that this factor weighed against exercising jurisdiction because a state court declaratory judgment action "would provide [the insurance company] with the same remedy it seeks in federal court, [and] the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401.

In the present case, Ellis argues that a "better alternative remedy" is a declaratory action in state court. [R. 16, p. 16]. Sentry contends that "a separate action for declaratory relief in state court … would not be any better or more effective than filing this action[.]" [R. 17, p. 12]. The problem with Sentry's argument, however, is that it fails to explain why that is true. In other words, Sentry's argument "fails to show … that the Kentucky court lacks alternative remedies which are better or more effective than [this] action" and "fails to explain why the state court is not capable of bifurcating the coverage issue from liability or otherwise ordering discovery in an efficient manner." *Wilson*, 2019 U.S. Dist. LEXIS 70842, at *21. Instead, Sentry asserts that it filed its declaratory judgment action in this Court because that is what the court in the Underlying Action "indicated" it should do. [R. 17, p. 12]. While the Court does not dispute Sentry's statement as false, the Court also acknowledges that the court in the Underlying Action did not specify that this Court was the only, let alone superior, forum in which Sentry could adequately resolve its coverage issues. *See* [R. 11–1, pp. 5–6]. In fact, this Court finds a declaratory relief action in the state court to be a better option than this federal declaratory action for several reasons.

First, the specific coverage issues before the Court, *see supra* Section I.B., are a questions of state law. *See* [R. 31, pp. 2–4].  True, Kentucky law may be clear on those issues, and a federal court could "confidently apply it without fear of creating conflicts with the Kentucky courts or intruding on their jurisdiction." *United Specialty*, 936 F.3d at 400. However, Kentucky courts remain in a superior position to interpret that state law and apply it to the facts of this case. *See, e.g.*, *Flowers*, 513 F.3d at 562. Thus, although a state declaratory action would provide Sentry with the same remedy that it seeks from this Court, "the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401; *see also Massachusetts Bay*, 759 Fed. App'x at 441 (acknowledging that "Tennessee courts are in a superior position to resolve questions of state law").

Furthermore, as the Court noted in *Flowers*, a state court could combine the two actions (assuming both actions are filed in the same court), allowing a single judge to resolve all issues and avoiding the potential for confusing scheduling problems, issues with the orderly presentation of facts, and res judicata issues.[5] *Flowers*, 513 F.3d at 562; *see also Massachusetts Bay*, 759 Fed. App'x at 441 (quoting *Flowers*, 513 F.3d at 562) (recognizing that the "Tennessee courts 'might also have been able to combine the two actions so that all issues could be resolved by the same judge.'");  *see also White Pine*, 2022 U.S. Dist. LEXIS 118416, at *37 (quoting *Flowers*, 513 F.3d at 562) ("A declaratory action in Kentucky state court also has the advantage of efficiency — such an action … could be consolidated with the underlying state court action and 'all issues could be resolved by the same judge.'"). This is true even though the Underlying

---

[5] The Court makes this statement while acknowledging Kentucky Bar Association Ethics Opinion E–452 ("E–452"), which addresses potential conflicts of interest in a situation where the insured is represented by an attorney provided by the insurer, but the insurer simultaneously contests coverage. If such conflict would present itself if Sentry intervened in the Underlying Action, the conflict can be avoided, as dictated by E–452, in two ways: (1) the coverage issues could be bifurcated from the liability issues and stayed pending the determination of the liability issues or (2) the insured could be represented by separate counsel with respect to the coverage questions in the combined liability and coverage proceedings. As a result, at this time, the Court will not concern itself with any potential conflicts of interests due to Sentry's possible intervention in the Underlying Action.

Action developed for a time in federal court, as the Underlying Action's state law claims have been remanded to Washington Circuit Court, the court in which the Underlying Action was originally commenced. *See* [R. 16–1 (state court complaint)]; *see also Boerste v. Ellis Towing, LLC, et al.*, No. 3:17–CV–298 at R. 271 (Amended Opinion and Order, "remand[ing] the case to Washington Circuit Court for adjudication of the remaining state-law claims.").

Finally, the Court has no reason to believe that Sentry's interests would not be adequately protected in a state court declaratory action or that the state court is not in a position to "define its own law in a fair and impartial manner." *Bituminous*, 373 F.3d at 816–17 (quoting *Am. Hom Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)). Thus, for all the reasons just stated, the Court finds that a declaratory action in state court is a better remedy than this federal declaratory action. Accordingly, factor five weighs heavily against accepting jurisdiction.

### F.  Balancing the Factors

The Sixth Circuit has never articulated the relative weight of each *Grand Trunk* factor, acknowledging instead that the factors are not always equal. *Flowers*, 513 F.3d at 563; *Hoey*, 773 F.3d at 759. This Court has stated, however, that "[t]he most important consideration in exercising this discretion [under the Declaratory Judgment Act] is whether retaining jurisdiction interferes with state-court litigation." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *2. While this may be true, the Sixth Circuit has also indicated that "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on [the] facts of the case." *Hoey*, 773 F.3d at 759. In other words, the Court must balance the five *Grand Trunk* factors on a case-by-case basis.

In doing so, the Court is afforded "unique and substantial" discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In this way, the Declaratory Judgment Act—with its

"textual commitment to discretion, and the breadth of leeway [the Supreme Court] always understood it to suggest"—is distinguished "from other areas of law in which concepts of discretion surface." *Id.* at 286–87. Thus, federal district courts possess "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 286. Further, the "facts bearing on the usefulness of the declaratory remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* With this "unique and substantial" discretion in mind, the Court balances the five *Grand Trunk* factors, mindful that "[a]nother court might have made a different choice." *See Hoey*, 773 F.3d at 760 (recognizing that "[a]nother court might have made a different choice—some judges regularly decline jurisdiction in cases like this").

In this case, the first factor weighs against exercising jurisdiction. The second factor weighs slightly in favor of accepting jurisdiction. The third factor—whether the declaratory plaintiff is engaging in procedural fencing—is neutral. Given the lack of evidence to suggest procedural fencing, the Court assigns this third factor little weight. *Massachusetts Bay*, 759 Fed. App'x at 439 (citation omitted). The fourth factor weighs against exercising jurisdiction. Lastly, under factor five, the availability of a better alternative remedy in state court weighs heavily against accepting jurisdiction.

Against these factors, only one of which slightly weighs in favor of exercising jurisdiction, the Court must balance "considerations of efficiency, fairness, and federalism." *Hoey*, 773 F.3d at 759. Here, these considerations weigh against exercising jurisdiction. First, the parties are involved in common negligence, tort, and damages disputes in state court. *See* [R. 16–5 (amended state court complaint)]. If the Court accepts jurisdiction, it forces the parties to engage in litigation on two fronts "to receive a simple declaration of rights under an insurance contract—a matter that could easily be handled by the state courts that are more familiar with

23

Kentucky insurance law in the first place." *Grange*, 565 F. Supp.2d at 791. In fact, the state court "is positioned to decide every issue amongst all the parties in this matter, allowing the parties to fight this battle on a single front." *Id.* Furthermore, an ongoing federal declaratory action could certainly create delays in the state court proceeding, or confusion as to scheduling, discovery, and other matters. It would also deprive a state court of the opportunity to interpret and apply its own law. Moreover, since the issue here is not one of federal law but rather of state regulated insurance contracts, an issue which this Court has no special interest, this Court is not a superior forum. By declining to exercise its substantial discretion to hear the case, this Court does not "rob" the insurance company of anything. *See id.* at 791–92. Sentry has an adequate (even superior) remedy via a state court declaratory judgment action or possible intervention in the state court proceeding. *Id.* at 792.

Further, the Court is mindful that it should not exercise jurisdiction under the Declaratory Judgment Act "unless it serves a useful, practical purpose." *Grange*, 565 F. Supp.2d at 792 (quoting *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949)). "[I]f our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Id.* at 785 (citations omitted). Accordingly, for the reasons set forth above, the Court finds that the *Grand Trunk* factors, when considered together and balanced against considerations of efficiency, fairness, and federalism, weigh against the exercise of jurisdiction.

### III. Conclusion

Having balanced these five factors with "underlying considerations of efficiency, fairness, and federalism," and having considered the unique facts of this case, the Court will exercise its broad discretion to decline jurisdiction over this matter under the Declaratory

Judgment Act. *See Wilton*, 515 U.S. at 286 (recognizing that district courts are afforded "unique and substantial" discretion under the Declaratory Judgment Act).

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.      The Court declines to exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, and this matter is **DISMISSED WITHOUT PREJUDICE**.

The **Clerk of Court** shall **STRIKE** this case from the Court's active docket.

This the 26th day of August, 2022.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY